UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIE ROGERS,

    Plaintiff,

    v.                          Case No. 3:23-CV-1006-CCB

NIKOLOS ANDERSON, et al.,

    Defendants.

**OPINION AND ORDER**

On December 19, 2023, Plaintiff Willie Rogers, proceeding *pro se*, filed an amended complaint against six defendants, Indiana State Police Superintendent Douglas Carter, and Troopers Nikolos Anderson and Matthew Henson (the "State Defendants"), as well as LaGrange County, LaGrange County Sheriff Tracy Harker, and LaGrange County Clerk Kimberly Johnson (the "LaGrange County Defendants").[1] Rogers brings several claims against the State Defendants and LaGrange County Defendants based on allegations of excessive force, false arrest, and imprisonment.

On January 10, 2025, the State Defendants and the LaGrange County Defendants separately moved for summary judgment. (ECF 46, ECF 50). In compliance with N.D. Ind. Local Rule 56-1(a)(4), both the State Defendants and the LaGrange County Defendants filed and served the requisite Notice to *Pro Se* Litigant informing Rogers

---

[1] Rogers also alleged a Fifth Amendment due process claim against a seventh defendant, Cindy Llera. On January 3, 2024, the Court, under a previous presider, dismissed without prejudice Mr. Roger's claim against Llera. (ECF 6).

that a summary judgment motion has been filed against him, that if he does not agree

with the facts in the motion that he must submit evidence to dispute those facts, that he

has a right to file a response to the motion and that he may request for additional time

to respond before the deadline, and attaching copies of Fed. R. Civ. P. 56 and Local Rule

5-1. (ECF 49, 54). Rogers did not respond to either the State Defendants' or LaGrange

County Defendants' motions for summary judgment. Rogers also did not request an

extension of the response deadlines. Both motions are now ripe for ruling. Based on the

applicable law, facts, and arguments, the State Defendants' motion for summary

judgment (ECF 50) and the LaGrange County Defendants' motion for summary

judgment (ECF 46) are granted.

## I.    RELEVANT BACKGROUND

The following facts are not in dispute. On September 20, 2021, the LaGrange

Circuit Court in cause no. 44C01-2109-CM-000388 issued a warrant for Rogers' arrest.[2]

On October 7, 2021, the LaGrange Circuit Court entered an order recalling the warrant.

On March 14, 2022 at approximately 7:48 a.m., Indiana State Police Trooper

Nikolos Anderson conducted a traffic stop on a vehicle driven by Rogers for a speeding

violation. (ECF 51-1 at 1). Trooper Henson arrived a few minutes later. (ECF 51-2 at 1).

Trooper Anderson ran Rogers' information through the Indiana State Police System and

was alerted that there was an arrest warrant for Rogers. (ECF 51-1 at 1). Trooper

Anderson contacted dispatch and confirmed there was an arrest warrant for Rogers.

---

[2] The Court may take judicial notice of actions by other courts. *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016).

(*Id*.) Trooper Anderson and Trooper Hansen then arrested Rogers and checked his person. (*Id*.) During the search and arrest, Rogers indicated to Troopers Anderson and Henson his belief that the arrest warrant was invalid. (ECF 51-1 at 2; ECF 51-2 at 1). Trooper Anderson then asked dispatch again to confirm if there was a warrant for Rogers' arrest. (ECF 51-1 at 2.) Dispatch contacted LaGrange County, and confirmed that there was an arrest warrant. (*Id*.) Trooper Henson then assisted in escorting Rogers to the passenger seat of Trooper Anderson's vehicle, and Trooper Anderson drove Rogers to the LaGrange County jail. (*Id*.) Trooper Henson then left the scene at approximately 8:21 a.m. (ECF 51-2 at 2). Upon arrival and before booking, Trooper Anderson asked LaGrange County staff to confirm that the warrant for Rogers' arrest was valid. (ECF 51-1 at 2). Jail staff conducted a search and notified Trooper Anderson that the arrest warrant was quashed and no longer valid. (*Id*.) Trooper Anderson then escorted Rogers back to his vehicle, and dropped Rogers off at approximately 9:24 a.m. (ECF 51-3 at 1).

## II.  LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *see also* *Matshushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).

To determine whether a genuine dispute of material fact exists, the Court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). The court must not "sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). The court does not have to conduct research or develop arguments for parties either. *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011); *see also United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived.").

"To defeat a motion for summary judgment, the non-moving party cannot rest on the mere allegations or denials contained in his pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000) (internal quotations omitted), *overruled on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (quotations omitted); *see also Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

### III.   ANALYSIS

#### a.   The State Defendants' Motion for Summary Judgment (ECF 51)

##### i.   Rogers' claims against the State Defendants in their official capacity

The State Defendants first argue that all of Rogers' claims against the State Defendants in their official capacities are barred under the Eleventh Amendment.

The State Defendants are employees of the Indiana State Police Department, and the Indiana State Police Department is an agency of the State of Indiana. *See Endres v. Ind. State Police*, 349 F.3d 922, 927 (7th Cir. 2003) ("The Indiana State Police, as a unit of state government, is not a 'person' as § 1983 uses that term and therefore is not amenable to a suit for damages under that statute."). The Eleventh Amendment "usually bars actions in federal court against a state, state agencies, or state officials acting in their official capacities." *Peirick v. Indiana Univ.-Purdue Univ. Indianapolis Athletics Dept.*, 510 F.3d 681, 695 (7th Cir. 2007). There are three exceptions to Eleventh Amendment immunity:

> First, a state may waive immunity by consenting to suit in federal court; second, Congress may abrogate the state's immunity through a valid exercise of its powers; third, under the *Ex parte Young* doctrine, a plaintiff may file "suit[ ] against state officials seeking prospective equitable relief for ongoing violations of federal law...."

*Id.* (citing *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir.1997)). None of these exceptions apply here. Indiana has not consented to this lawsuit. Congress did not abrogate the States' immunity by enacting Section 1983. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Rogers is only seeking a declaration that the State Defendants' conduct is unconstitutional, and monetary damages. (ECF 3 at 10-11).

Rogers does not request a prospective injunction or present any evidence to suggest that the State Defendants are committing ongoing violations of federal law. All of Rogers' allegations relate to a past violation of federal law—his arrest following the execution of an invalid warrant. Accordingly, the Eleventh Amendment bars Rogers' claims against the State Defendants' in their official capacities, and the State Defendants' motion for summary judgment as to those claims is granted.

### ii. Rogers' excessive force claims against Troopers Henson and Anderson

Next, the State Defendants argue that summary judgment is proper as to Rogers' excessive force claims against Troopers Henson and Anderson (Count 6) because there is no genuine issue of material fact that Troopers Henson and Anderson acted reasonably when they arrested Rogers.

The plaintiff bears the burden of proving that the police officer used excessive force. *Rice v. Burks*, 999 F.2d 1172, 1175 (7th Cir. 1993). Excessive force claims under § 1983 are analyzed under the Fourth Amendment "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "This inquiry requires an examination of the 'totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government[al] interests at stake.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir.2000)). "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest." *Id.* This inquiry is done from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. An

arresting officer also "has the right to use some degree of physical force or threat of force to effectuate the arrest." *Id.*

In support of their motion for summary judgment, the State Defendants point to Exhibit D, which the State Defendants manually filed. (ECF 55). In the State Defendants' notice of manual filing, they state that the manual filing contains a CD/DVD of "videos relating to Defendant's Exhibit D to Defendant's Motion for Summary Judgment." (*Id.*) In moving for summary judgment on Rogers' excessive force claim, the State Defendants reference Exhibit D in their brief in arguing that Rogers gave no indication that he was in pain or complaint about the handcuffs. However, Exhibit D that was manually submitted by the State Defendants contains a 12-minute video that is time stamped October 12, 2021 at 08:49 PM—several months before Roger's arrest the morning of March 14, 2022—and shows what appears to be several uniformed officers congregating in a hallway. (ECF 55). There is no audio. The video appears to be an inadvertent filing because it does not show anyone being arrested or in handcuffs.

But even without the State Defendants' purported video of Rogers' arrest, Rogers presents no evidence to support his allegation that Troopers Henson and Anderson used excessive force when they handcuffed and escorted him to the police car. Trooper Anderson states in his affidavit that, after he contacted dispatch and confirmed there was an arrest warrant for Rogers, he "approached the vehicle with Trooper Matthew Henson and restrained Mr. Rogers with handcuffs and checked his person," that "Trooper Henson then assisted in escorting Mr. Rogers to the passenger seat of my vehicle," and then "Mr. Rogers was allowed to call an unidentified individual,

presumably his relative, to explain his situation" and that, after calling dispatch again to confirm the arrest warrant was valid, Trooper Anderson "drove Mr. Rogers to LaGrange County jail." (ECF 51-1 at 1-2). Trooper Henson's affidavit similarly states that Trooper Anderson "restrained Mr. Rogers with handcuffs and checked his person," that Trooper Henson "assisted in escorting Mr. Rogers to the passenger seat of Trooper Anderson's vehicle" and that Mr. Rogers was allowed to make a phone call. (ECF 51-2 at 1-2). Rogers presents no evidence that the force used in effecting his arrest was objectively unreasonable to support his excessive force claim. *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) ("Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence, it has that would convince a trier of fact to accept its version of the events."); *see also Brownell v. Figel*, 950 F.2d 1285, 1292-93 (7th Cir. 1999) ("[I]n the absence of any evidence of specific wrongdoing, [plaintiff]'s excessive force claim is speculative and fails to raise any material issue of fact for trial."). Accordingly, there is no genuine issue of material fact as to whether Troopers Henson or Anderson used excessive force when they arrested Rogers, and so they are entitled to judgment as a matter of law.

### iii. False arrest and imprisonment claims against the State Defendants

Rogers brings claims under § 1983 for unlawful arrest, detention, and imprisonment against all defendants, including the State Defendants. (Counts 7 and 8).

Rogers alleges that the State Defendants unlawfully arrested him on a warrant that had been previously quashed. Probable cause "is an absolute defense to a false

arrest claim." *Pryor v. Corrigan*, 124 F.4th 475, 486 (7th Cir. 2024). "[A] police officer cannot be held liable for false arrest if the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable." *Brown v. City of Fort Wayne*, 752 F. Supp. 2d 925, 256 (N.D. Ind. 2010). "The probable cause balance favors the government when an arrest is executed pursuant to a warrant." *Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022).

The State Defendants present an affidavit from Trooper Anderson where he states that on March 14, 2022 at approximately 7:45 a.m., he conducted a traffic stop on a vehicle driven by Rogers for a speeding violation. (ECF 51-1 at 1). Trooper Anderson ran the driver through the Indiana State Police system and was alerted that there was an arrest warrant for Rogers. (*Id.*) Trooper Anderson contacted dispatch and confirmed that there was an arrest warrant for Rogers. (*Id.*) Trooper Anderson then approached the vehicle with Trooper Henson and restrained Rogers with handcuffs and checked his person. (*Id.*) During the search and arrest, Rogers indicated to Trooper Anderson that he believed that his arrest warrant was not valid, and so Trooper Anderson asked dispatch to confirm once more if there was a warrant for Roger's arrest. (*Id.* at 2). Dispatch contacted LaGrange County and confirmed that there was an arrest warrant, and so Trooper Henson assisted in escorting Rogers to the passenger seat of Trooper Anderson's vehicle. (*Id.*) Trooper Anderson then drove Rogers to the LaGrange County jail. (*Id.*) Upon arrival, Trooper Anderson asked LaGrange County staff to confirm that the arrest warrant was valid before booking. (*Id.*) Jail staff conducted a search and notified Trooper Anderson that the arrest warrant had been quashed and was no longer

valid. (*Id*.) Trooper Anderson then states he escorted Rogers back to his vehicle and dropped him off at approximately 9:24 a.m. (*Id*.)

Rogers presents no evidence that either Trooper Anderson or Trooper Henson did not act in good faith or that they acted unreasonably when they arrested Rogers. There is no evidence that Trooper Anderson or Trooper Henson knew or had reason to know that the warrant was invalid. Rather, the evidence shows that Troopers Anderson and Henson believed in good faith that there was probable cause to arrest Rogers. Troopers Anderson and Hansen reasonably believed that the arrest warrant was valid because Trooper Anderson confirmed with dispatch twice that the arrest warrant was valid. *See Johnson v. Myers*, 53 F.4th 1063, 1068 (7th Cir. 2022) ("[T]he court's inquiry is limited to what the officer knew at the time of the arrest and not what has been gained from hindsight. This knowledge is assessed from the perspective of an objectively reasonable police officer."). Once Troopers Anderson and Hansen learned at the jail that the arrest warrant was invalid, the evidence shows they acted prudently in releasing Rogers. Because Rogers has not shown the existence of a genuine issue of material fact as to whether Troopers Anderson and Hansen acted in good faith belief that the arrest of Rogers was made with probable cause, or that such belief was reasonable, Troopers Anderson and Hansen are entitled to judgment as a matter of law as to Rogers' false arrest and imprisonment claims.

For that reason, Rogers' claim that Trooper Anderson unlawfully searched him based on an invalid warrant also fails. [3] It is a "bright-line rule that police are entitled to search the persons and possessions of everyone arrested on probable cause, with or without any reason to suspect that the person is armed or carrying contraband." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004). As stated, the Court finds that Trooper Anderson acted in good faith in believing that there was probable cause to arrest Rogers, and that such belief was objectively reasonable, and so Trooper Anderson was permitted to search Roger's person as a search incident to a lawful arrest. *See id.*

Finally, Rogers alleges that his false arrest and imprisonment claim is asserted against all defendants, including Superintendent Carter. The doctrine of *respondeat superior* does not apply to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001). Thus, individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). A defendant "will be deemed to have sufficient personal responsibility if he directed the conduct causing the constitutional violation, or if it occurred with his knowledge or consent." *Sanville*, 266 F.3d at 740.

There is no evidence that Superintendent Carter had any personal involvement with the arrest or detention, that he directed Rogers' arrest or detention, or that he knew about the arrest or detention. There is also no evidence that Superintendent Carter had

---

[3] Rogers does not allege that Trooper Henson searched him, only Trooper Anderson. *See* ECF 3 at 6 ("Defendant Anderson unlawfully searched, seized, and arrested Plaintiff on a warrant that was quashed[.]").

any personal involvement with the issuance or quashing of the invalid warrant. Therefore, there is no genuine issue of material fact that Superintendent Carter was personally involved in any alleged constitutional deprivation. Accordingly, Superintendent Carter is also entitled to judgment as a matter of law as to Rogers' false arrest and imprisonment claims under § 1983.

### iv. Failure to intervene claim against Trooper Henson

Rogers also alleges a failure to intervene claim under § 1983 against Trooper Henson (Count 2). An officer may be liable under § 1983, even as a bystander, if the officer "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir.2009). "A realistic opportunity to intervene may exist if an officer could have called for a backup, called for help, or at least cautioned [the officer] to stop." *Stewardson v. Biggs*, 43 F.4th 732, 736 (7th Cir. 2022).

For reasons already stated, Rogers has failed to demonstrate that a genuine issue of material fact exists as to his excessive force claim and to his unlawful arrest and detention claim. Rogers has also not argued or presented evidence of the use of excessive force or of a constitutional violation for which Trooper Henson failed to intervene. Accordingly, the State Defendants' motion for summary judgment as to Rogers' failure to intervene claim against Trooper Henson (Count 3) is granted.

12

### v. Failure to train and supervise claim against Superintendent Carter

Rogers also asserts a claim under § 1983 for failure to properly train and supervise against Superintendent Carter in his individual capacity and official capacity (Count 2). Because the Court already determined that Rogers' official capacity claims against Superintendent Carter are dismissed, the Court only addresses the claim against Superintendent Carter in his individual capacity.

Rogers alleges that Superintendent Carter failed to properly train and supervise Troopers Anderson and Henson "to make [a]n inquiry into the validity of that warrant when there was sufficient reason to believe that the warrant was invalid." (ECF 3 at 9). As stated, the doctrine of *respondeat superior* does not apply to § 1983, and so Superintendent Carter must be personally responsible for the deprivation of a constitutional right. *Sanville*, 266 F.3d at 740; *see also Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012) ("To show personal involvement, the supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see."). "[A] supervisor may be liable for deliberate, reckless indifference to the misconduct of subordinates." *Sanville*, 266 F.3d at 740.

There is no evidence that Superintendent Carter acted with deliberate, reckless indifference to any conduct of Troopers Anderson and Henson, or evidence that Superintendent Carter failed to properly train Troopers Anderson and Henson. Rather, the evidence shows that Troopers Anderson and Henson inquired several times as to whether the warrant was valid. Because Rogers fails to demonstrate the existence of a

genuine issue of material fact as to his failure to properly train and supervise under § 1983 claim against Superintendent Carter, the State Defendants' motion for summary judgment as to that claim (Count 2) is granted.

### vi.  State law claims against the State Defendants

Next, the State Defendants argue that summary judgment is proper to the extent Rogers asserts any claims arising under state law, arguing that there is no private right of action for monetary damages under the Indiana Constitution, and there is no genuine issue of material fact that Rogers failed to exhaust administrative remedies.

The Court agrees with the State Defendants that Rogers cannot bring a claim under the Indiana Constitution because Rogers only requests monetary damages, and there is no express or implied right of action for monetary damages under the Indiana Constitution. *Smith v. Ind. Dept. of Correction*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007).

To the extent Rogers' claims arise under state law, Rogers was required under Indiana Code § 34-13-3-6 to file an administrative claim with the Indiana State Police or the Office of the Indiana Attorney General for any tort claim within 270 days after the loss occurred. Ind. Code § 34-13-3-6. Failure to comply with the statutory notice requirement is fatal to a plaintiff's tort claim against government entities and public employees. *Daugherty v. Dearborn Co.*, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005).

The State Defendants argue that there is no genuine issue of material fact that Rogers did not give notice to the Indiana State Police or the Office of the Indiana Attorney General of any tort claim. In support, the State Defendants present an affidavit from Michael Ward, director of investigations for the Indiana Office of Attorney

General, stating that a search of the Office's records revealed that Rogers did not file a Notice of Tort Claim. (ECF 51-5). The State Defendants also present an affidavit from Jeffrey Pitts, a senior attorney for the Office of the Superintendent for the Indiana State Police, stating that their office does not have a record of a Notice of Tort Claim from Rogers. (ECF 51-4).

Even if Rogers was not aware of any loss that occurred until the date he filed his amended complaint on December 19, 2023, he needed to file an administrative claim 270 days from that date, or September 14, 2024. Rogers presents no evidence of filing the requisite claim with the Indiana State Police or the Office of the Indiana Attorney General by that deadline, or otherwise argue the deadline is tolled. Accordingly, to the extent Rogers asserts any tort claims arising under state law, those claims are dismissed.

### vii. Conspiracy claim against the State Defendants

Rogers also alleges that the State Defendants conspired to deprive him of his constitutional rights (Count 4). "To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Rogers has not presented any evidence or argument that the State Defendants deprived him of his constitutional rights, or of any agreement between the State Defendants with any of the other defendants in this case. Accordingly, Rogers' conspiracy claim also fails.

### viii.   Qualified immunity

Finally, the State Defendants argue, that they are entitled to qualified immunity. "Public officials performing discretionary functions have qualified immunity in § 1983 actions if their conduct 'could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Lauer v. Dahlberg*, 717 F. Supp. 612, 613 (N.D. Ill. 1989) (quoting *Anderson v. Creighton,* 107 S.Ct. 3034, 3038 (1987). Whether qualified immunity applies is dependent upon the "objective legal reasonableness of the official's action." *Id.*

The Court finds that the State Defendants are entitled to judgment as a matter of law on Rogers' claims because Trooper Anderson and Henson had an objectively reasonable belief that the warrant was valid based on the two calls to dispatch during the traffic stop in which dispatch informed Troopers Anderson and Henson that there was an active warrant for Rogers' arrest. *See Lauer*, 717 F. Supp at 613 (defendant "is entitled to rely upon the information he receives over the police radio"). Accordingly, the State Defendants are entitled to qualified immunity as to all of Roger's § 1983 claims.

### b.   The LaGrange County Defendants' Motion for Summary Judgment

#### i.   Claims against LaGrange County arising from alleged failure to supervise and train Sheriff Harker and Clerk Johnson

Rogers alleges that LaGrange County failed to train Sheriff Harker and Clerk Johnson "in entering quash and recalled order." (ECF3 at 8). However, under Indiana law, a county does not have any control over the acts of the sheriff. *Delk v. Bd. of Com'rs of Delaware Co.*, 503 N.E.2d 436, 440 (Ind. Ct. App. 1987). Accordingly, LaGrange County

does not have authority over the sheriff and their deputies, so LaGrange County is entitled to judgment as a matter of law on all of Rogers' claims arising from a failure to supervise and train Sheriff Harker. *See Est. of Drayton v. Nelson*, 53 F.3d 165, 167 (7th Cir. 1994).

As to Clerk Johnson, the LaGrange County Defendants present an affidavit from Kevin Myers, a member of the Board of Commissions of the County of LaGrange, affirming that the Board of Commissioners[4] has no supervision or management of Clerk Johnson, or of the day-to-day operations of the LaGrange County Clerk's Office. (ECF 46-1 at 1). Rogers has presented no evidence to support his failure-to-train Clerk Johnson claim against LaGrange County, therefore LaGrange County is also entitled to judgment as a matter of law as to that claim.

For these same reasons, Rogers' claims again LaGrange County under a respondeat superior theory (count 9) is also dismissed because Rogers has presented no evidence to show that LaGrange County supervised or controlled Sheriff Harker or Clerk Johnson. To the extent Rogers' respondeat superior claim is brought under § 1983, that claim also fails because respondeat superior does not apply to § 1983. *Sanville*, 266 F.3d at 740; *see also Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012).

### c. Claims against Sheriff Harker and Clerk Johnson in their individual capacities

The LaGrange County Defendants also move for summary judgment as to Rogers' Section 1983 claims against Sheriff Harker and Clerk Johnson in their individual

---

[4] "The county is known in law only by its board of commissioners, and acts, as a county, through its board." *Bd. of Comm'rs v. Wild*, 37 Ind. App. 32, 35 (Ind. Ct. App. 1905).

capacities, arguing that neither had any personal involvement with the warrant recall error.

As stated in the Court's discussion of the State Defendants' motion for summary judgment, individual liability under § 1983 requires "personal involvement in the alleged constitutional deprivation." *Colbert,* 851 F.3d at 657 (7th Cir. 2017). An individual has personal involvement if they directed the conduct causing the constitutional violation, or if the conduct occurred with their knowledge or consent. *Sanville*, 266 F.3d at 740.

In support of the LaGrange County Defendants' motion for summary judgment, they present an affidavit from Sheriff Harker. Sheriff Harker states that the LaGrange County Sheriff's Office updates warrant information based upon orders it receives, and that the Sheriff's office received no notice of a recall of the warrant for Rogers that was issued in September 2021 in cause no. 44C01-2109-CM-000388, that a review of the court order recalling the September 20221 warrant shows it was distributed to Plaintiff's counsel and the LaGrange County Prosecutor's Office, that Rogers was not in the custody of the LaGrange County Sheriff's office deputies when he was arrested on March 14, 2022, and that Rogers was never booked into the LaGrange County Jail on March 14, 2022. (ECF 46-3 at 1-2). As to Clerk Johnson, the State Defendants present an affidavit from Johnson where she states that neither she nor the LaGrange County Clerk's Office has responsibility for the issuance of warrant recalls, that the issuance of warrant recalls is the responsibility of the court where the criminal case is pending, and that neither she nor the LaGrange County Clerk's Office issued any warrant recall or

had responsibility for the recall of warrant for Rogers in relation to cause no. 44C01-2109-CM-000388.

Rogers presents no evidence or argument in support of his claim against Sheriff Harker or Clerk Johnson for personal involvement in any constitutional deprivation. Accordingly, Sheriff Harker and Clerk Johnson in their individual capacities are entitled to judgment as a matter of law as to Rogers' § 1983 claims.

### d. *Monell* claim against the LaGrange County Defendants

Rogers also asserts a *Monell* claim against LaGrange County, as well as Sheriff Harker and Clerk Johnson in their official capacities. Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). A plaintiff can sue local governments under Section 1983 when an official policy of that local government inflicts the injury that the government as an entity is allegedly responsible. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, a local government may be liable for monetary damages if the plaintiff can show that the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010).

For a *Monell* claim, a plaintiff must show that the unconstitutional act complained of was caused by an official policy, a practice, or custom that is widespread

and well settled, or an official with policy making authority. *Thomas*, 604 F.3d at 303. Rogers has failed to present any evidence that he was subjected to any unconstitutional treatment during his arrest and detainment. There is no evidence that the LaGrange County Defendants arrested or unlawfully detained Rogers. Nor has Rogers presented any evidence of a custom or policy that resulted in the warrant recall error. Rather, Rogers' claims all arise from his individualized experience—his arrest following the execution of an invalid warrant—without evidence of constitutional violations experienced by anyone else. That is insufficient to support a *Monell* claim. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) (the Seventh Circuit has "repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations.").

In rare circumstances, it is possible for a single violation to suffice for "failure-to-train" liability, as is alleged here, "where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend,* 997 F.3d 725, 731 (7th Cir. 2021). "To establish single-incident liability, a plaintiff must prove that municipal policymakers know that its employees will confront a given situation and not train for it, and the need for training must be obvious without consideration of prior violations." *Id.* at 734-35 (internal citations omitted). The Seventh Circuit has made it clear that the single-incident theory is reserved only for narrow circumstances "when a municipality fails to train its employees, who 'have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Id.* at 735 (quoting *Connick v. Thompson*, 563 U.S. 51, 64 (2011)). "Only where a failure to train reflects a

"deliberate" or "conscious" choice by a municipality . . . can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Rogers has not presented any evidence that the policymakers knew that its employees would confront a given situation and not train for it here. *Flores*, 997 F.3d at 731. Rogers' *Monell* claim thus fails and the LaGrange County Defendants' motion for summary judgment is granted as to the *Monell* claim against LaGrange County and Sheriff Harker and Clerk Johnson in their official capacities.

### e.  Conspiracy claim against the LaGrange County Defendants

Rogers also asserts a conspiracy claim against all defendants, including the LaGrange County Defendants, under § 1983 (Count 4). "To establish conspiracy liability in a § 1983 claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

Rogers presents no evidence to support a § 1983 conspiracy claim. There is no evidence that any of the LaGrange County Defendants reached an agreement to deprive Rogers of his constitutional rights. Accordingly, summary judgment is proper as to Rogers' conspiracy claim against the LaGrange County Defendants.

### f.  State law claims against the LaGrange County Defendants

Like the State Defendants, the LaGrange County Defendants move for summary judgment to the extent Rogers asserts any state law claims because the LaGrange County Defendants did not receive the requisite notice under Ind. Code § 34-13-3-8.

Under Ind. Code § 34-13-3-8, a plaintiff is required to file a notice against the political subdivision involved for any tort claim within 180 days after the loss occurs. Ind. Code § 34-13-3-8. A political subdivision includes a county. Ind. Code § 34-6-2.1-155. Failure to comply with the statutory notice requirement is fatal to a plaintiff's tort claim against government entities and public employees. *Daugherty v. Dearborn Co.*, 827 N.E.2d 34, 36 (Ind. Ct. App. 2005). The plaintiff has the burden to prove compliance with the notice requirement. *Brown v. Alexander*, 876 N.E.2d 376, 384 (Ind. Ct. App. 2007).

The LaGrange County Defendants argue that any state law claim against them is barred because Rogers did not file the requisite notice. Assuming that Rogers suffered a loss the date that he filed the amended complaint on December 19, 2023, the latest that Rogers was required to file the notice was June 16, 2024. Rogers has not presented any evidence to show that he filed the notice required under Ind. Code § 34-13-3-8 within the 180-day statutory requirement. Accordingly, the LaGrange County Defendants are entitled to judgment as a matter of law to the extent Rogers asserts any state law claims arising from his alleged unlawful arrest and detention based on the invalid warrant.

## IV.  CONCLUSION

For the reasons discussed above, because Rogers has failed to show the existence of a genuine issue of material fact as to any of his claims against the State Defendants and the LaGrange County Defendants, the State Defendants' motion for summary judgment (ECF 50) and the LaGrange County Defendants' motion for summary judgment (ECF 46) are **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor

of Defendants Douglas Carter, Nikolos Anderson, Matthew Henson, LaGrange County,

Tracy Harker, and Kimberly Johnson.

SO ORDERED on September 9, 2025.

　　　　　　　　　　　　　　　　/s/ *Cristal C. Brisco* 　　　　　　　
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT